ANCONA REALTY COMPANY v. JOHN FRAZIER, Appellant.—41 S. W. (2d) 820.

Division One, September 5, 1931.

*H. T. Alkire* and *Eastin & McNeely* for appellant.

*A. M. Tibbels, R. B. Bridgman, Marcy K. Brown* and *A. N. Adams* for respondent.

ATWOOD, J.—Ancona Realty Company, a corporation, brought suit against John Frazier, appellant herein, to establish title to about 153 acres of land along the Missouri River in Holt County, Missouri. Its amended petition, upon which the case was tried, was filed March 8, 1927 (original petition filed January 27, 1927), and alleges that plaintiff is the owner in fee simple and in the legal possession of said land, consisting of three tracts, one containing 8.7 acres in the fractional southeast quarter of Section 19, Township 59, Range 38; another, containing 106.82 acres in the fractional southwest quarter of Section 20, said township and range; and the other, containing about 38 acres in the fractional northwest quarter of Section 29, said township and range; and that defendant claims some interest therein adverse to plaintiff's claim the nature or character of which is unknown to plaintiff. Said petition also alleges title to said lands in plaintiff through Paul T. Frye by patent from Holt County dated March 15, 1920, and by adverse possession under statutes of limitations, and invokes the doctrines of estoppel

*in pais,* equitable estoppel and laches against defendant on matters therein pleaded. Said petition also alleges title in defendant by patent dated May 17, 1917, from Holt County to 63.63 acres of land immediately north of and adjacent to a part of plaintiff's said lands.

Defendant's answer contained a general denial, admissions that plaintiff is a corporation and that defendant claims an interest in said lands adverse to the interest of plaintiff, and allegations that he is in possession of said lands and has been in the open, notorious, exclusive and adverse possession thereof for more than ten years next before the filing of this suit, and has paid taxes thereon ever since 1918, when said lands first became taxable; that "by a decree of this court affirmed by the Supreme Court of this State in the case of Hahn v. Dawson et al., rendered on the 15th day of June, 1896, he was adjudged to be the owner of a tract of land occupying the left bank of the Missouri River as it then bordered a portion of said land; that the tract of which he was decreed to be the owner and which was involved in the litigation referred to, occupied a position on the bank of the Missouri River as it then ran and to which a large portion of the land claimed by plaintiff in this action was afterwards made as accretion; that subsequent to said decree and on the 25th day of March, 1903, he purchased from Joshua Cole a tract of land lying immediately up the river from the tract awarded to him by the judgment aforesaid, and bordering said tract on the west and north; that he secured title to said tract from the said Joshua Cole by a quitclaim deed bearing date aforesaid and recorded in Book 81 at page 561, of the deed records of Holt County, Missouri; that the said two tracts of land after the purchase aforesaid from the said Joshua Cole constituted a single body of land, presenting a contiguous and unbroken front upon the Missouri River as it then ran and to which all of the lands claimed by the plaintiff in this action have been made by accretion and that all of the land described in plaintiff's petition were made and formed to said two tracts of land owned by defendant by the gradual receding of the said Missouri River and by imperceptible and gradual accretion to plaintiff's said land as herein described and that plaintiff is by virtue thereof the legal and absolute owner in fee simple of said lands."

Plaintiff filed a reply containing general and specific denials of the allegations in defendant's answer, and a reiteration and amplification of certain matters pleaded in its amended petition. Defendant filed replication admitting that he received a deed from Holt County to a tract of land containing 63.63 acres, and denying each and every other allegation contained in plaintiff's reply.

The judgment was that plaintiff is the owner in fee simple absolute of the lands described in plaintiff's petition; that defendant has no claim, right, title or interest, possessory or otherwise therein; that defendant be enjoined and restrained from prosecuting in any form any suit or action against plaintiff of or concerning said property; that plaintiff is entitled to have defendant ejected from said property, and that writ of restitution issue in favor of plaintiff and against defendant. From this judgment defendant has appealed.

The first point urged by appellant is: ''The action is at law, and it was error for the court to overrule defendant's objection to the introduction of evidence and to deny to defendant a trial by jury.'' Examination of the record discloses that counsel for defendant objected to the introduction in evidence of certain exhibits offered by plaintiff because ''incompetent, irrelevant and immaterial; second, because the petition itself states no cause of action. It is not a suit in equity. There is no equity in the bill. This is not an equitable suit, and not triable as such.'' Subsequently plaintiff introduced other exhibits and evidence without objection. It does not appear that defendant ever requested that the case be tried to a jury. It follows that the point now made must be ruled against appellant.

Counsel for appellant next insist that defendant was the riparian owner to which the land in controversy accreted, and that the accretion followed and is supported by the same title. The evidence shows that about the year 1888 defendant went into actual possession of certain lands formed in the original lines of the Missouri River opposite lot 2 of the northwest quarter of Section 20, Township 59, Range 38, Holt County, Missouri, building a house and fences thereon, cultivating the same and exercising the usual rights of ownership with reference thereto. A part of this land was involved in the ejectment suit of Hahn v. Dawson et al., wherein judgment for defendants, including John Frazier, defendant herein, was affirmed by this court in banc June 15, 1896, and reported in 134 Mo. 581, 36 S. W. 233. In that case the jury returned a verdict for defendants, evidently on a finding that the land in question was island formation and not accretion to the mainland. Plaintiff failed in the Hahn case because her ownership was confined to mainland and as the island formation was not accretion thereto she was without title to dispossess defendants who, according to the opinion, were in the actual occupancy thereof as squatters. Of course this case was not determinative of defendants' title. It was a possessory action only and left defendants where it found them, in possession of the land. In the instant case there is evidence

that defendant Frazier continued in possession of land including the thirty acres, more or less, involved in the Hahn suit, and on May 17, 1917, purchased and acquired patent for 63.63 acres from Holt County which included the tract involved in the Hahn suit and about 33.63 acres, also of island formation, lying immediately east of it, on a part of which Frazier had built his first house. Adjoining the Hahn tract on the west is another piece of land, containing about thirty acres and a part of the same island formation, for which defendant acquired a quitclaim deed dated March 5, 1903, from Joshua Cole and wife, who had been in actual possession thereof for thirteen years prior to that date. These tracts of land extended south to a high bank, which the testimony shows marks the line to which the Missouri River cut in its course northward shortly prior to the year 1901. From this line southward and eastward to wire fences standing when this suit was instituted in 1927, which defendant claims he had previously built and maintained for many years, and westward to the Missouri River, lies the land now in dispute.

Assuming, without holding, that the lands sued for are accretion to the above described land of which defendant is now in undisputed possession, it becomes pertinent to inquire whether defendant had title to such land at the time this accretion was formed, and if not whether he afterwards acquired title to such land and its accretion as such.

The evidence is reasonably clear that this accretion, if it may be deemed such, was formed chiefly during the years 1901-2-3 and not later than 1907.

Section 1 of an act of the General Assembly approved April 8, 1895 (Laws 1895, p. 207), effective June 21, 1895, reads:

"All lands belonging to this state, not otherwise appropriated under the laws thereof, which have been formed by the recession and abandonment by their waters of the old beds of lakes and rivers in this state, are hereby granted and transferred to the respective counties in which such lands are located, to be held by such counties for school purposes."

Section 4 of this act reads:

"All lands that may hereafter form by the recession from and abandonment of the bed of any lake or river, which would otherwise have become the property of this state, shall pass in the same manner as in the case of such lands already formed, to the counties in which they are situated, for the purposes and subject to the power of survey and sale as provided in preceding sections of this act."

Section 3 of this act reads:

"No statute of limitations shall begin to run against the counties in which any such lands are situated to prevent them from recover-

ing or acquiring such lands, for twenty years after the passage of this act; but after that date such counties, as to such lands, shall be subject to the same limitation laws as private individuals.''

By act of the General Assembly approved June 3, 1899 (Laws 1899, p. 276), this act of 1895 was amended by inserting between the words ''state'' and ''are'' in the fourth line of said Section 1, the words ''or by the formation of islands in the navigable waters of the state;'' by inserting between the words ''river'' and ''which,'' in the second line of said Section 4, the words ''and islands which may hereafter form in the navigable waters of said state;'' and by adding new sections thereto. The act as so amended was carried into the Revised Statutes of 1899 as Article 6, Chapter 122, Sections 8346 to 8360, both inclusive, appeared without change in subsequent revisions, and now appears in Revised Statutes 1929 as Article 6, Chapter 66, Sections 11165 to 11179, both inclusive.

From the foregoing it is apparent that in 1899 Holt County succeeded to the State's ownership of said island formation, including the tracts already referred to as being now in the undisputed possession of defendant, and no statute of limitation could begin to run against it for twenty years after said effective date of the original Act of 1895. We have already alluded to the fact that if there was any accretion to land here conceded to be in the undisputed possession of defendant it was formed not earlier than 1901 nor later than 1907. Defendant's only patent from Holt County was the aforesaid conveyance of 63.63 acres obtained under date of May 17, 1917. It follows that at the time the alleged accretion was formed defendant was without any title whatever to any part of said land now in his undisputed possession, and that title thereto, including the accretion, if any, was vested in Holt County and continued in said county and its assigns unless vested in defendant by operation of the ten-year Statute of Limitation after June 21, 1915.

Did defendant acquire title to any accretion by his patent of May 17, 1917? The land so conveyed is therein referred to as located in Holt County, Missouri, and described as follows:

''A tract of land lying in the Northwest Quarter of Section 20, Township 59, Range 38, being described as follows: Commencing at the southwest corner of Lot 2 of the Northwest Quarter of Section 20, Township 59, Range 38, thence down the original left bank of the Missouri River to the southeast corner of the said Lot 2, thence west 24 links, thence South 1 degree west 31.51 chains to the high bank of an arm of the Missouri River, thence Northwesterly along said high bank to a point 31.60 chains south of the southwest corner of said Lot 2 of the Northwest quarter of Section 20, Township 59, Range 38, thence north to the point of beginning, containing 63.63 acres more or less.''

In order to constitute defendant a riparian owner under this conveyance it would be necessary for us to construe the above words, "to the high bank of an arm of the Missouri River," as a call to the water's edge of the Missouri River at or near the designated measurement. If an arm of the Missouri River at that time in fact formed a water boundary on the south of the land conveyed such fact would bě fatal to defendant's claim that land lying beyond this water was accretion to the land he acquired by his patent. On the other hand, if the high bank referred to was not the north line of a then existing arm of the Missouri River, but was in fact as defendant contended at the trial the high erosion bank to which the river had cut in its northward course shortly prior to 1901 and against which the land in dispute was formed by accretion in 1901-2-3 and not later than 1907, then the above description obviously includes only the lands embraced within the specified metes and bounds and was never intended to include the accretion, which ever since its formation had been the property of Holt County and, according to the weight of the evidence, for many years had been of sufficient elevation to be susceptible of private ownership. Where alluvion or batture at the time of sale has attained a sufficient elevation to be susceptible of private ownership it does not pass with the land unless so expressed in the act of sale. [Producers' Oil Co. v. Hanszen, 132 La. 691, 61 So. 754 (aff. 238 U. S. 325) ; Ferriere v. New Orleans, 35 La. Ann. 209; Hollingsworth v. Chaffe, 33 La. Ann. 547; Barre v. New Orleans, 22 La. Ann. 612; Cochran v. Fort, 7 Mart. (N. S.) 622.] In Frank v. Goddin, 193 Mo. 390, 397, 91 S. W. 1057, it is conceded that a grantor may convey his upland by such boundaries, calls and immutable lines and descriptions as would result in a reservation to the grantor of appurtenant flat lands and their present or subsequently accreted alluvion. [See also Dunlap v. Stetson, 4 Mason (U. S.) 349, 366; and Cook v. McClure, 58 N. Y. 437.] We think such was the effect of defendant's patent from Holt County and, consequently, he did not thereby acquire any interest in the land now in dispute. This instrument does not purport to convey an island as such with the river for a boundary, like the conveyances in Frank v. Goddin, supra; Dumm v. Cole County, 315 Mo. 568, 577, 287 S. W. 445, and similar cases.

We also find that defendant acquired no title by limitation to any accretion as such, because the record does not show title by limitation in defendant to any of the land now in defendant's undisputed possession. Defendant is in no position to claim title by limitation to the 63.63 acres he acquired from Holt County by patent May 17, 1917, because limitation could not begin to run against the county until June 21, 1915, and in his petition for said patent, filed in the county court of said county May 17, 1917, he expressly recognized the

rights of said county therein and on the same day paid said county for said land and accepted its patent therefor. As for the Cole tract of about thirty acres, lying immediately west of said 63.63 acres and referred to in defendant's answer, defendant's proffered evidence of title is substantially confined to a quitclaim deed therefor dated March 5, 1903, from Joshua Cole and wife to him with Cole's affidavit embodied therein stating that he had been in adverse possession of said land for 13 years last past and had cultivated all of it except about three acres for eleven years. It is plain from what . we have already said that no part of Cole's period of possession could be adverse to Holt County, and the character and extent of defendant's possession of this tract is not disclosed by the evidence. So the whole record fails to show any title in defendant to these lands that would support title in him to any accretion thereto, and the question of accretion or no accretion thus drops out of the case.

On the issue of defendant's title by adverse possession after June 21, 1915, under the ten-year Statute of Limitation, of the land now in dispute without regard to the question of accretion, the evidence is conflicting. When his deposition was taken on February 28, 1927, defendant testified that part of his fence on the south side of this land was there and part of it was not at the time he received his patent for Holt County in 1917, and that the fence that was there at the time he was testifying was one that he had built and that it had been there "for seven years, anyhow." At the trial in May, 1927, he seemed reluctant to fix dates, but, speaking of the line running south from the high erosion bank along the east side of the land in question, he said "it has been ten years or longer, or more, I have had a fence there." He also said that he built a fence across the south end of this tract about the same time and pastured this land and cut and sold wood from it. Other parts of his testimony indicate that his use of said land in this fashion began and continued from earlier times. Many of defendant's witnesses were reluctant or unable to fix dates in describing his occupancy of this land, although several testified at the trial that defendant had this land under fence and had pastured it and cut wood therefrom for "ten years or better," and one witness said that defendant fenced the land as far back as 1911. On the other hand, John H. Peret, Surveyor of Holt County from 1909 to 1920, who in May, 1917, surveyed the 63.63 acres that defendant bought of Holt County, testified positively that there was no fence at that time along the east or the south side of the land now in dispute. Several witnesses testified as positively that there were no fences there as late as 1920, that defendant was not making any visible use of or claiming any interest in this land then, and that a squatter named Hensdale who lived on an adjoining tract of land cultivated a part of this land

for two or three seasons about this time. Whether the case be regarded as an action at law or a suit in equity, we think the court's finding against defendant on this issue must be sustained.

Our above conclusions render consideration of other points urged by appellant unnecessary, and the judgment is affirmed. All concur.