## SMITH-McCORD-TOWNSEND DRY GOODS CO., a Corporation, Respondent, v. AMERICAN EXPRESS COMPANY, a Corporation, Appellant.*

*In the Kansas City Court of Appeals, March 3, 1924.*

1. **APPEAL AND ERROR:** Assignment of Errors: Rules: Rule as to Assignment of Errors in Brief Held Sufficiently Complied with. Where there were no separate assignments of error in appellant's brief, but under "points and authorities" said assignments are separately stated and numbered, thus making clear the contentions of appellant, there was sufficient compliance with Rule 17 of this court.

2. ———: Question as to Sufficiency of Evidence to Support Judgment Held Properly Preserved for Review on Appeal. Where defendant asked no instructions nor findings of fact, but stood upon its general denial of liability under the existing facts, excepting to the judgment which contained all findings of fact, *held* defendant thereby preserved for review the sufficiency of the evidence to support the judgment though it did not offer a demurrer to the evidence or ask a declaration of law peremptorily requiring a finding in its favor.

3. **BAILOR AND BAILEE:** Negligence: Evidence Held to Show Constructive Delivery of Merchandise to Defendant, Forwarding Agent, as Bailee for Hire, and Loss of Bill of Lading and Failure to For-

(561)

216 M. A.—36

ward Constituted Negligence upon its Part. Where petition alleged that defendant held itself out to public as a forwarder of merchandise, and it had been the general custom among merchants and others shipping merchandise in bond from points in Europe to points in the United States, to ship to it as consignee in New York City, and to deliver to it a bill of lading for goods so shipped, together with instructions where to forward the merchandise, *held* there was constructive delivery of the merchandise intended for plaintiff to defendant as bailee for hire, and an implied agreement to forward same, and that loss of bill of lading and failure to forward constituted negligence upon its part.

4. **BAILMENT: An Express Contract is not Necessary to Constitute a Bailment.** It is a general and accepted rule that a bailment may be created without an express agreement to receive and hold for a particular purpose.

*Headnotes 1. Appeal and Error, 3 C. J., section 1587 (Anno); 2. Appeal and Error, 3 C. J., section 746 (Anno); 3. Bailments, 6 C. J., sections 23, 61; Carriers, 10 C. J., section 27; 4. Bailments, 6 C. J., section. 30.

Appeal from Circuit Court of Jackson County.—*Hon. Samuel A. Dew*, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

*Hogsett & Boyle* for respondent.

ARNOLD, J.—This is an action in damages to recover for alleged negligent delay in shipping from New York nine cases of merchandise and the loss occasioned thereby on account of decline in value. The shipment originated in Paris, France, and the suit was for the recovery of $3273.46 and interest. Plaintiff is a corporation engaged in the wholesale dry goods business in Kansas City, Mo., and defendant is a corporation engaged in the business of forwarding agents for hire of shipments of merchandise, and maintains offices in New York and other places in America and Europe.

The petition alleges that about September 15, 1920, plaintiff, by its shipping agent in Antwerp, Belgium, one Von Den Abeele, shipped nine cases of merchandise belonging to plaintiff to defendant at New York City by S. S. "Finland," Red Star Line; that the bill of lading issued by the steamship company was forwarded to defendant by plaintiff's said agent who, thereafter, delivered to defendant in New York written instructions to forward said merchandise as soon as possible to plaintiff at Kansas City, and alleges that it became the duty of defendant to claim the goods promptly and forward them; that ". . . the defendant, in violation of its duty, negligently lost, misplaced and mislaid the bill of lading and written forwarding instructions aforesaid; and negligently failed to claim, receive and accept the merchandise from the Red Star Line; and negligently allowed and permitted the merchandise to be placed in a government warehouse as 'unclaimed freight,' and negligently failed to promptly forward the merchandise to plaintiff at Kansas City, Mo., and negligently delayed claiming said merchandise and forwarding same to plaintiff at Kansas City, Mo." It is further alleged that as a result of such delay, the shipment which should have been delivered to plaintiff on November 1, 1920, did not arrive in Kansas City until February 15, 1921. The answer of defendant is a general denial, as is also the reply of plaintiff. The cause was tried to the court without the aid of a jury and the finding and judgment were for plaintiff in the sum of $3276.46. After motion for new trial was overruled, defendant appealed.

There was offered in evidence an agreed statement of facts which with some oral testimony introduced at the trial includes all the testimony presented. The agreed statement of facts is as follows:

"1. On or about September 15, 1920, F. Von Den Abeele, a forwarder of merchandise with office and place of business in the City of Antwerp, Belgium, without previous arrangement with the American Express Com-

pany, delivered to the S. S. 'Finland,' Red Star Line, at the Port of Antwerp the nine cases of merchandise referred to in the petition herein, for which he received in duplicate the bill of lading of the Red Star Line, acknowledging the receipt from him of "SMC 1000-8, nine cases cotton tissues" to be delivered at the Port of New York unto "American Express Company, New York or to his or their assigns."

"2. That the attached Exhibit 1 is a true and perfect copy issued by the Red Star Line covering the shipment above described.

"3. That on or about the 17th day of September, 1920, said F. Von Den Abeele enclosed one of the said two original bills of lading above described together with a letter (of which the attached Exhibit 1½ is a true copy), in an envelope, sealed and postage prepaid, addressed to the American Express Company, New York, and dispatched the same by registered mail through the Belgium Post Office. Except as above stated, F. Von Den Abeele had at no time any negotiations or correspondence with any office or with any employee or agent of the American Express Company either in Belgium, France, New York or elsewhere.

"4. The registered letter enclosing said bill of lading was numbered 756 by the Antwerp postal authorities and that the attached Exhibit 2 is a true and perfect copy of the original registry receipt for said letter issued by the Antwerp postal authorities to F. Von Den Abeele. The said registered letter containing said bill of lading was receipted for on October 4, 1920, by American Express Company at New York City, as shown by the attached photostatic copy of certificate of the Antwerp postmaster, marked Exhibit 3.

"5. That on or about September 23, 1920, Periandros, commissionaires, having an office place of business in Paris, France, sent one of the original copies of the consular invoice (issued in quadruplicate) for said nine cases of merchandise in question to the defendant Amer-

ican Express Company at No. 65 Broadway, New York, enclosed with a letter of which the attached Exhibit 4 is a true and perfect copy.

"6. That said letter and its enclosures were deposited in the mail with postage fully prepaid in the usual manner and course of business, and the same have never been returned to the writer and that said letter bore on the outside of the envelop the usual form of return card giving instructions to return said letter to Periandros at the proper address in Paris, France, if not delivered to the addressee American Express Company, New York City.

"7. That said letter from Periandros of September 23, 1920, with its enclosures was received by the American Express Company some time during the first ten days of October, 1920."

The first point for our consideration is plaintiff's motion to dismiss the appeal, wherein it is charged that defendant's brief does not distinctly and separately allege the errors claimed to have been committed by the trial court; that said brief, in fact, does not contain any assignment of error whatever, and therefore it is in violation of Rule 17 of this court.

An examination of defendant's brief discloses there are, in fact, no separate assignments of error, but under "Points and Authorities," said assignments are separately stated and numbered, thus making clear the contentions of appellant. This has been held to be a sufficient compliance with the rule and follows the ruling of the Supreme Court in Kirkland v. Bixby et al., 282 Mo. 462, 466 and cases there cited. [See also Forsee v. Garrison, 208 Mo. App. 408; 235 S. W. 408; Lange v. Midwest Motor Securities Co. 231 S. W. 272.] The points upon which defendant relies are clearly understood by the court and plaintiff seems not to have been misled as indicated by the answers made to every point raised by appellant. We hold there is a substantial compliance with Rule 17, and the motion to dismiss the appeal is therefore overruled.

Appellant urges that the American Express Company never agreed, to undertake, and did not undertake to act as a forwarder of the shipment in controversy until January 20, 1921, and that the trial court erred in holding to the contrary, and herein is the basis for this appeal. In the discussion of this point, it is well to keep in mind that defendant is not a common carrier, but is merely a forwarding agent for hire, engaged exclusively in the business of forwarding shipments consigned to it for that purpose. Plaintiff bases its action upon the ground that there was an implied contract of agency shown in the record and evidence produced, and that defendant's negligent performance of the duties created by this implied contract resulted in loss to plaintiff.

Defendant contends the evidence in the case does not support plaintiff's theory and that the agreed statement of facts shows that without prior arrangement with defendant's agency at Antwerp, or with any other agency of defendant, one F. Von Den Abeele, a forwarding agent at Antwerp, forwarded by registered post on September 17, 1920, one of the original bills of lading issued by the Red Star Steamship Company, together with a letter reading as follows:

"The American Express Company,
          "New York.
"Dear Sirs:
    "Enclosed I hand you original bill of lading relative to 9 cases cotton tissue shipped per S. S. "Finland" to your care and of which kindly acknowledge receipt by return mail.
    "I remain, Dear Sirs,
                    "Yours faithfully,
                        "F. W. Von Den Abeele."

A receipt for said registered letter was signed in defendant's office in New York on October 4, 1920.

On or about September 23, 1920, Periandros, Commissionaires, at Paris, France, sent one of the original copies of the consular invoice for the goods to defend-

ant at No. 65 Broadway, New York, together with a letter stating: "We have consigned to you from Antwerp by S. S. Finland on September 15th through Van Den Abeele 9 cases which kindly forward to the address here below." . . .

| "Mark | Number | Cases | Contents |
|-------|--------|-------|----------|
| SMC | 1000/08 | 9 | Cotton tissues |

In Bond to Kansas City.

Which please forward as soon as possible to Messrs Smith-McCord-Townsend Dry Goods Co., Kansas City, Mo. Enclosed legalized invoice for same."

This letter, together with enclosures, was received by defendant between the 1st and 10th of October, 1920. The evidence shows that said Periandros is a resident agent of plaintiff at Paris and sometimes acts as buyer for plaintiff and at other times, merely as a forwarder of merchandise to point of expert. In the instant case, said agency forwarded the merchandise to Antwerp, at which point Von Den Abeele took charge and forwarded it to defendant, as above stated. The evidence shows that the S. S. "Finland" arrived at the port of New York and that the goods in question were unloaded about Sept. 29th and not being claimed, were placed in a government warehouse. The testimony further shows that after receipt of the bill of lading sent by Van Den Abeele, de fendant either lost or mislaid it. Defendant insists this letter and the bill of lading were the only documents received by it from Abeele relative to the shipment, and that neither of these documents indicated where the goods were to be sent, for whom they were intended, or in what manner they should be forwarded to point of destination; that the letter of Von Den Abeele did not direct defendant to follow instructions from Periandros, of whose authority to give forwarding instructions, defendant had no knowledge. Defendant claims this was an irregular mode of dealing and that defendant was confused by it; that defendant held the consular invoice until October 16, 1920, when, having received no instruc-

tions from shipper, defendant sent the consular invoice to plaintiff. The goods not being called for in ten days after being stored in government warehouse, under United States Customs Regulations, could not be obtained except by presentation of consular invoice and certificate of depreciated currency.

Not receiving the shipment when expected, plaintiff wrote defendant to make inquiries concerning it, about October 22, 1920. Receiving no reply to this letter, plaintiff addressed a letter to one J. S. Johnson, Kansas City, Mo., agent of the American Railway Express Company, a common carrier, a different corporation from that of defendant, but which maintains an office with the agent of defendant in Kansas City, Mo. This letter was referred to defendant by said Johnson. Before a reply to it was received, plaintiff wrote Howell & Co., New York, on November 16, 1920, asking them to take the necessary steps to locate and forward the merchandise. Howell & Company then instructed Downing & Company, New York brokers, to attend to the matter. From the time of the receipt of plaintiff's letter of November 16th, Howell & Co. and Downing & Co. tried, without success, to have the goods released.

On November 23, 1920, plaintiff received a letter from one Griffith, general traffic agent of defendant, in reply to the letter written to Johnson. This letter requested that defendant be furnished with consular invoice, certificate of depreciated currency and check to cover approximate amount of duty, and stated that "on receipt of these necessary documents, we will make entry as promptly as possible and get the goods forward." Plaintiff did not comply with this request and on December 1st, defendant wrote plaintiff that all documents had been turned over to Howell & Company.

About January 10th, thereafter, Mr. Barbee of plaintiff company called at defendant's offices in New York and saw a Mr. Cummins of defendant company who told him that a bond of $100,000 would be required before the

goods could be released, because defendant had no records showing that it was properly authorized to deliver the goods to plaintiff. As plaintiff did not care to furnish a bond of $100,000 to cover a shipment of the value of only $12,500, Mr. Barbee so stated. He was then sent to the fourth floor to see some other officer of the company and by that official to the tenth and eleventh floors and from there to the sixth floor to see some other officials, all without avail. Mr. Barbee thus spent two full days in what he termed a fruitless search. At this time, he demanded to see someone in supreme authority and was referred by Mr. Cummins to the president of the company. He saw a Mr. Berkey, assistant to the president, and on his advice, Mr. Barbee turned over to him all the papers Downing & Co. held, together with a check for the amount of the duty. Thereafter defendant forwarded the merchandise and eight of the nine cases arrived in Kansas City February 16th and the remaining case arrived March 3.

Plaintiff urges that at the trial defendant conceded the sufficiency of the evidence to make a case for the jury by its failure to offer a demurrer at the close of plaintiff's evidence and at the close of all the evidence, and by its failure to ask a declaration of law peremptorily requiring a finding in its favor; that in adopting such a course, defendant, in effect, preserved no point for review by this court. Plaintiff cites authorities in support of this position which we have examined and find that where a defendant, without asking a demurrer to the evidence, or a peremptory instruction, joins issue by asking instructions or declarations of law on other phases of the case, it has been held to amount to a concession that there were sufficient facts upon which to base a finding.

But that is not this case. Here, defendant asked no instructions, nor findings of fact, but stood upon its general denial of liability under the existing facts, maintaining this defense throughout the trial. Defendant

excepted to the judgment of the court, and there were no findings of fact other than contained in the judgment. There was nothing outside the judgment against which an exception might be lodged. None of the cases cited by plaintiff reach the situation in this case, and we rule against plaintiff on this point.

As stated above, defendant's first point is that defendant never agreed to undertake, and never undertook, to act as forwarder of the shipment in question until January 20, 1921, and that such an agreement is a prerequisite to liability on the part of defendant.

The petition alleges, and the evidence shows, that for many years the defendant held itself out to the public as a forwarder, and that it has been a general custom among merchants and others shipping merchandise in bond from points in Europe to points in the United States to ship by steamship carrier to defendant as consignee in New York City, and to deliver to defendant a bill of lading for goods so shipped, together with instructions to forward the merchandise by rail to the owner at destination, on arrival at said port; that defendant made it a practice and custom to accept merchandise so consigned and to forward same according to instructions; that defendant, therefore, is a forwarding agent.

It must be conceded that the shipment in question was somewhat irregular, but whether this irregularity was such as to absolve defendant from liability for negligence is for our determination. The agreed statement of facts shows that the letter from F. Von Den Abeele of September 16, 1920, enclosing the bill of lading, gave no forwarding instructions. But on its face the bill of lading shows marked "SMC, 1000/08, 9 cases cotton tissue," and that the cases themselves were marked "In bond to Kansas City." And this letter and bill of lading were received by defendant by registered letter on October 4, 1920, as shown by receipt therefor.

It is further admitted in the agreed statement of facts that on September 23, 1920, Periandros, Commis-

sionaires at Paris, sent to defendant one of the copies of the bill of lading, together with a letter giving full forwarding instructions for the shipment in question, and that this letter with its enclosures was received by defendant during the first ten days of October, 1920. The testimony shows that the letter and bill of lading from Von Den Abeele were lost or misplaced by defendant after receipt. Under these facts, it must be held that the loss of the Von Den Abeele letter was negligence on the part of defendant. Moreover, the bill of lading bore the notation "SMC" and the testimony shows that plaintiff previously had transacted business through defendant and that SMC was the abbreviated designation of plaintiff. We hold these facts sufficient to constitute defendant a bailee for hire. It is a general and accepted rule that a bailment may be created without an express agreement to receive and hold for a particular purpose. It is said in 6 Corp. Jur. 1105: "An express contract is not necessary to constitute a bailment, many recognized cases of bailment being founded on implied contract."

We hold there was an implied agreement between plaintiff and defendant based upon the fact, as the evidence tends to show, that defendant, for years, had held itself out to the public as a forwarder for hire; and in fact, as the evidence tends to show, had, on occasions, accepted shipments for forwarding presented in much the same manner as in this case. It is noted that defendant strongly urges that the testimony does not show this. It will not be necessary to set out herein the tesimony on this point, but as we read and construe it, the trial court was justified in finding the facts as we have stated. Moreover, we hold that on the face of the bill of lading there was at least sufficient data to have advised defendant that the plaintiff was the ultimate consignee. The loss of the said bill of lading was so chargeable to plaintiff. The letter of Periandros, with its enclosures, mailed September 23, 1920, furnished all the information lacking

in the Von Den Abeele communication.   Therefore we hold there was a constructive delivery of the consignment and acceptance thereof by defendant.

In the case of Scharff v. Meyer, 133 Mo. 428, 449, the court said:

"A bill of lading is understood to be a symbol of the property for which it is given, and when in favor of the consignor, his agent or factor, is transferable by delivery without indorsement for value, and when so transferred carries with it the property in the goods which it covers."   This is in accord with the general rule as defined in 6 C. J. supra.   There can be no question in the case at bar but that defendant actually received the bill of lading and thereby constructively accepted the merchandise for forwarding, under the rule announced above.

We have carefully considered defendant's citations and arguments on this point, but find nothing therein contrary to the views expressed.   The fact that defendant is not a common carrier does not affect the application of the general rule.   We hold there was substantial evidence to support the finding of the court, sitting as a jury, and that the judgment for plaintiff in the sum of $3273.46 should be sustained.   Finding no reversible error of record, the judgment is affirmed.