247 S.W.2d 663 (1952)
PETERSON et al.
v.
HARPST.
No. 42577.
Supreme Court of Missouri, Division No. 1.
March 10, 1952.
Rehearing Denied April 14, 1952.
*664 Gresham, Hizer & Boughan and Walter J. Gresham, Kansas City, for appellants.
Terrence Riley, Platte City, for respondent.
VAN OSDOL, Commissioner.
This is an appeal from a judgment determining title to an irregular tract of land, an island in the Missouri River, to be in defendant.
Plaintiffs-appellants, heirs at law and widow of Andrew Hartvedt, deceased, had instituted the action to try and determine title to a described irregular tract of land, being the "same island described in patent from Platte County to Andrew Hartvedt, dated March 3, 1924, * * * together with all accretions that have been added thereto." Plaintiffs alleged the island with accretions now contains approximately 1300 or 1400 acres. Defendant in his answer alleged his ownership of a tract described in the answer (and in the trial court's judgment) which tract was alleged to contain 810.6 acres "together with any accretions thereto." There can be no doubt that the varying descriptions in the respective pleadings were intended to describe the same island, title to which is in dispute. However, defendant introduced evidence tending to show that the island described in the patent to Andrew Hartvedt was destroyed by the action of the river in 1924. According to defendant's evidence, two islands were built by action of the river in 1926; and subsequently merged forming the one island. Defendant alleged that he had owned and had been in possession of the island, the land in the answer described, since 1927; asserted his claim of title by adverse possession; and prayed the court to ascertain and determine the title and to adjudge the defendant the absolute owner of the land.
In a colloquy between counsel and the trial judge, a reference was made to an action which Andrew Hartvedt, who died in 1943, had instituted in his lifetime in which action he claimed title to a part or all the land described in defendant's answer. See Hartvedt v. Harpst, Mo.Sup., 173 S.W.2d 65. A reference by counsel was also made to an action brought by some of the plaintiffs herein for specific performance of a contract of compromise, and for partition. See Hartvedt v. Harpst, Mo.App., 216 S.W. 2d 539. In the instant case defendant's answer contained the allegation that a decree was entered March 12, 1947, in the Circuit Court of Clay County, in which decree defendant was adjudged the owner and entitled to the possession of 350 acres of the island in the decree described; however, prior to the trial of the instant case, defendant by leave of court withdrew the paragraphs of his answer containing such allegation. And there was no other pleading and no evidence introduced in the instant case tending to show the final disposition of the cases cited supra, nor is it disclosed in the record that any final order or judgment was entered in the cited cases upon which either of the parties, plaintiffs or defendant, rely as a former adjudication of title. Counsel for plaintiffs-appellants in his opening statement advised the trial court of a defect of parties plaintiff in these former actions, and we may assume the parties to the instant action have abandoned the former litigation. Forsee v. Garrison, 208 Mo.App., 408, 235 S.W. 473.
This court will review the instant case, an action at law tried without a jury, upon both the law and the evidence as in suits of equitable nature. The judgment will not be set aside unless clearly erroneous, and due regard will be given to the opportunity *665 of the trial court to judge the credibility of the witnesses. RSMo 1949, § 510.310, subd. 4, V.A.M.S.; Hart v. T. L. Wright Lumber Co., 355 Mo. 397, 196 S. W.2d 272.
Plaintiffs, in support of their claim of title, introduced a patent from Platte County, dated November 1, 1920, Andrew Hartvedt, grantee, purporting to describe forty acres of land situate in Sections 5 and 6, Township 53, Range 36, Platte County, Missouri. However, the conveyance of 1920 did not correctly describe the forty acres of land intended, and plaintiffs introduced into evidence a correction deed from Platte County, dated March 11, 1924, which describes an irregular tract comprising forty acres in Sections 5 and 8. Plaintiffs claim title to the lands in their petition described under these conveyances from Platte County, it being contended by plaintiffs that the land, an island with accretions, as in the petition stated, is now approximately 1300 or 1400 acres. It is asserted by defendant that these conveyances were never authorized by any order of the County Court of Platte County and, consequently, Andrew Hartvedt never acquired title to the land (in the instruments described) in 1924. It is not contended by plaintiffs that they or their decedent and predecessor, Andrew Hartvedt, have ever entered upon or have been in actual possession of "the island"; and Malvina Hartvedt, widow of Andrew, testified that in 1934, 1935 or 1936 she and her husband had passed along the bank of the Missouri River and had looked "at this island". She and plaintiffs' attorney, who testified as a witness, identified a photograph as "the way the island looked from the mainland". Malvina stated the island was just "ground, or brush, whatever you call it willows. * * * I didn't see anything except willows". Counsel testified that in 1938 he had walked along the bank of the river to inspect the island, "and we climbed trees * * * and climbed on top of sheds". Malvina and counsel saw no house or barn or fences, or any other improvements.
Plaintiffs offered four exhibits certified as copies of War Department maps made by the Corps of Engineers, U. S. Army, on file in the office of the Division Engineer, Missouri River Division, Kansas City, which maps reflect segments of the Missouri River including the location of the land, the island, title to which is in issue, and delineate and show the main channel of the river and islands therein. These four maps, respectively of the years 1922, 1928, 1930 and 1940, each disclose an island of outline and extent somewhat like the outline and extent of the tract of land claimed by defendant, and title to which was adjudged to be in defendant by the trial court's judgment. The map of 1922, showing a survey made in November of that year, outlines an island, the body of which is partly in the same position and location in the river as the island involved in the instant case; but the body of island as shown by the map of 1922 is shown as lying in part more to the northwestward of the position of the tract in issue. Plaintiffs-appellants contend the trial court erred in excluding these exhibits.
Plaintiffs also introduced into evidence a conveyance from Platte County to defendant, Otto Harpst, dated June 4, 1928, purporting to particularly describe an irregular tract of 100 acres in Platte County; and a conveyance to defendant, Otto Harpst, dated June 4, 1928, purporting to particularly describe an irregular tract of 250 acres in Platte County. And plaintiffs introduced into evidence certified copies of minutes from the record of the County Court of Platte County, under date of June 4, 1928, which minutes recite the proceedings of the court as follows, "Court sells Otto Harpst 100 acres (and 250 acres) abandoned River Bed Land" near Sections 9 and 10, Township 53, Range 36, and "orders clerk to make deed for same." But it is conceded and the trial court found that the conveyances to defendant Harpst did not correctly describe the island (the two islands) or any part of the island, title to which is in issue.
Plaintiffs introduced receipts for taxes paid by them and their predecessor on real estate for the years 1924 and 1950, inclusive. The real estate is described in the tax receipts as parts of quarter-sections in Sections 5 and 8. Defendant introduced *666 receipts for taxes paid by him on 350 acres "Island Land" in various stated sections for the years 1930 to 1943, inclusive. Defendant testified he had paid taxes on "this island" from "1929 on".
A witness for defendant testified that he resided on the northeasterly bank of the Missouri River and near the island involved herein since 1916. In 1920, the river "cut" to the eastward; and in 1924, the river started "cutting again," and continued during the year 1925 and part of the year 1926. "There wasn't any island showed up there until 1926." In June of that year, an island started to form; in the subsequent two years, another island formed; the islands were mostly in Sections 4, 5, 8 and 9; the larger island was of approximately 250 acres; the smaller island was approximately 100 acres in area. The witness stated that defendant took possession of these lands in 1927; did some plowing in the fall of that year; and "sowed some duck stuff." In the spring of 1928, defendant moved his tractor, farm machinery, and some lumber onto the island, and later, in 1928 or 1929, defendant built fences and a two-story house. In 1929 or 1930, defendant built a large barn, "probably 60 feet long by 48". The land was rented and farmed until "up in the 30's, when it got so dry". In the dry years the land was rented as pasturage. Since that time there have been accretions added, and more recently parts "of the 250" have been taken away by the river.
Defendant testified of the improvements made in 1928, 1929 and 1930. He testified of filling in between and building a roadway uniting the two islands, and of the subsequent uniting or merging of the islands. "In 1928 there was just one body of 350 acres." Defendant estimated he had spent ten or twelve thousand dollars in clearing, fencing and improving the property. Defendant introduced a survey delineating the boundary of an irregular tract containing 350 acres. In making the survey, the surveyor was "running the lines on the old fence line". When the (united) island was again surveyed in 1938, it had increased in area and contained approximately 810 acres. Defendant had rented and farmed or pastured the land until 1946. He had never heard about Andrew Hartvedt "claiming land out there" until in 1938. During the three years preceding the trial in 1950, defendant had not undertaken to farm the lands because (as he explained) of high water in the spring and early summer of each of these years; but during these years he had gone "over there" and looked "around all the time". The improvements still exist, and defendant's farming machinery is even now (at the time of trial) at times kept on the island property.
It is contended by plaintiffs-appellants that defendant did not introduce evidence tending to show that he was in possession under claim of ownership; that defendant did not even have color of title, and furthermore had by his admission disclaimed ownership; and that no evidence was introduced tending to show that plaintiffs and their predecessor had notice, actual or constructive, of defendant's possession and claim of ownership.
While our cases lead to the conclusion that some writing should be shown purporting to convey land and to describe the same in order to establish "color of title," there is no necessity that an adverse claimant shall have had color of title to land actually possessed. It is only when the adverse claimant, in actual possession of part of land, seeks to draw to it the whole, that he must show color of title to the whole. Allen v. Mansfield, 108 Mo. 343, 18 S.W. 901; Lossing v. Shull, 351 Mo. 342, 173 S.W.2d 1. Apparently defendant thought the conveyances of 1928 vested title in him. The conveyances, however, were defective. They did not describe the land. But defendant went into possession of the land he intended to buy and own. Possession is a legal concept. It involves two thingsa present or, in the case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control. Or, in the language sometimes used in the cases, to exercise dominion over the object possessed. "One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because *667 he is mistaken as to the facts of legal ownership. * * *" (Our italics.) State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W. 2d 174, 177; Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544; Patterson v. Wilmont, Mo.Sup., 245 S.W.2d 116.
Plaintiffs introduced an answer filed by defendant in the Circuit Court of Clay County in the case of Hartvedt v. Harpst, Mo.Sup., 173 S.W.2d 65, in which answer defendant stated his ownership of land. The answer described the land as it was described in the conveyances from Platte County to defendant. It is contended that this was admission that he made no claim of title to the land involved herein. It may be conceded that a claimant may by admission recognize a paramount title in another, thereby destroying the hostile and adverse character of the claimant's continuing possession, Riebold v. Smith, Mo. App., 150 S.W.2d 599; but here defendant, in his answer filed in the former action, was stating the ownership of land as it was mistakenly described, and the inference is that he was intending or attempting to describe the land he actually possessed and claimed to ownthe land involved herein. The answer, in our view, is of little if any value as an admission, and we do not believe it amounted to a disclaimer of title to the land in dispute.
Defendant attempted to procure conveyances of the island (the two islands) in the year 1928. The conveyances were ineffectual in transferring the title; nevertheless, the evidence shows defendant had in the fall of 1927 entered into possession of the island then (or 1928) of approximately 350 acres in area. It is our opinion that the weight of the evidence sustains the finding that defendant entered upon the island and occupied the same, erected improvements thereon, and fenced and rented and farmed and used the property as his own during the uninterrupted continuation of his possession for more than the period of limitation.
Other than the testimony of plaintiff Malvina Hartvedt, and of plaintiffs' counsel, there was no evidence introduced by plaintiffs which tended to refute the testimony of defendant and his witnesses relating to defendant's possession and its continuity; his use and control of the land; and his erection of improvements. It would seem plaintiff Malvina and her husband and her counsel may not have seen the whole of the island by merely examining the island from positions along the bank of the river. An examination of the island upon an actual visit thereon or a view of the island from a position commanding a view of the main body of the land would have disclosed a two-story house, a barn 48' x 60', other smaller buildings, fences, and marks of extensive cultivation. See and contrast Musick v. Barney, 49 Mo. 458. The photograph identified by Malvina and by plaintiffs' counsel as a fair representation of the way the island looked to them is of little probative value. The picture, taken in 1941, shows a limited view, and it was not shown from where or of what portion of the island the picture was taken. The making of the permanent improvements and the use of the land to the extent as stated by defendant and his witnesses were visible manifestations of defendant's possession and, in our opinion, were of such an open and notorious character and so indicatory of adverse claim as to justify the presumption that plaintiffs' predecessor knew defendant was in possession claiming the land as his own.
We believe the trial court correctly found and determined title to be in defendant. Therefore, it is unnecessary to determine whether Andrew Hartvedt acquired title in 1924. And it is unnecessary to rule the question of the admissibility (and, if admissible, the effect) of the four exhibits (copies of War Department maps) which the trial court excluded. The copies of the maps were offered for the purpose of showing that an island existed in 1924 when Andrew Hartvedt received the "correction" conveyance from the County Court of Platte County; and that the island then existing with subsequent accretions is the identical island, title to which is in issue. We may assume an island existed in 1924; that Andrew Hartvedt acquired title thereto by the "correction" conveyance of that year; and that the island *668 continued to exist and is that involved herein.
The defendant, having entered into possession of the island in 1927 intending to claim it as his own, his possession and claim of ownership of the island extended over the accretions subsequently forming. As said by this court in the case of Benne v. Miller, 149 Mo. 228 at page 238, 50 S.W. 824 at page 827, "An accretion becomes a part of the land to which it is built, and follows whatever title covers the main land, whether it be title by deed or title by possession. * * * If the main land is in fact unoccupied, it is in the constructive possession of the owner of the true title, and with it goes the constructive possession of the forming accretion. But, if the main land is held in adverse possession to the true owner, he is not in constructive possession of the accretion; and, since the accretion in its formative state is not susceptible of actual occupancy in the sense of a pedis possessio, the indicia of the actual possession of him who holds the main land are extended over the forming accretion, and bring it within his actual possession. And it is not necessary that such possession of the accretion should be held for 10 years to give the possessor title, because title to it follows title to the main land; and when the latter is held under the conditions and for the length of time required by law to vest the title in the possessor, the title to the accretion follows, even though the deposit had been made but a year or a day. * * *" See also Kirschman v. Cochran, Mo.Sup., 241 S.W.2d 9; Lossing v. Shull, supra; Doebbeling v. Hall, 310 Mo. 204, 274 S.W. 1049; Campbell v. Laclede Gas Light Co., 84 Mo. 352; 2 C.J.S., Adverse Possession, § 205, page 806.
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.